UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| Plaintiff, | § | Crim. No.: 6:23-CR-00114-JDK |
| | § | |
| v. | § | |
| | § | |
| **FRANCISCO MARTINEZ** | § | |
| | § | |
| Defendant. | § | |

**GOVERNMENT'S RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION FOR ACQUITTAL**

The United States of America, by and through the United States Attorney for the Eastern District of Texas, files this Response in Opposition to Defendant's Motion for Acquittal (the Motion), ECF 68. The United States' trial evidence was sufficient to permit a rational jury to find the essential elements of both counts of the Indictment.

The Motion also reurges arguments from Martinez's Motion to Dismiss regarding the constitutionality of Count One, that the indictment constitutes double jeopardy, and that Count One is void for vagueness. *See* ECF 44, Motion to Dismiss. *See also* ECF 56, Government's Response to Motion to Dismiss.

### ARGUMENT AS TO SUFFICENCY OF EVIDENCE

#### I. There was Sufficient Evidence to Convict Martinez.

The elements the Motion lists describe the appropriate proof required for the indicted offenses, including Count One: 18 U.S.C. § 922(d)(10): Disposition of a firearm to a person who intends to dispose of the firearm in furtherance of a drug trafficking offense (hereafter "Section 922(d)(10)"). ECF 68 at 1-2. Martinez also provided the Court with a jury instruction definition for "Reasonable Cause to Believe," which the United States agreed to use. ECF 48 at 4.

The evidence is straightforward: An FBI operation recorded a video of a purchase of cocaine. Martinez and his friend appear on this video, in broad daylight, actively, furtively participating in an obvious drug deal: selling a baby formula canister containing several plastic bags of white powder and an AK-47 for cash, in the parking lot of a grocery store. Trial Exhibit 11. Martinez remains in a vehicle, and he can be heard on the video of his drug deal warning his accomplice of potential witnesses in the parking lot. *Id.* Martinez can be heard soliciting his accomplice, Santibanez, for Martinez's share of the payment while Santibanez is holding a large amount of cash. *Id.* Due to Martinez's remarks, he appears entirely aware a drug trafficking offense is occurring. A gas chromatograph analysis identified the purchased drugs as 55.9 grams (roughly two ounces) of cocaine. Trial Exhibit 6.

**United States' Response in Opposition to**
**Francisco Martinez's Motion for Acquittal – Page 1**

Santibanez, Martinez's accomplice, testified to his role and prosecution for four sales of cocaine, including the sale captured on video in exhibit 11. Santibanez authenticated his October 18, 2022 text messages planning the sale of two ounces of cocaine and an AK-47 for a combined price of $2800. Trial Exhibit 17. Santibanez testified that he profited $100 more from this deal than he would have without the AK-47. Santibanez identified his lifelong friend, Martinez, in the courtroom, as the man participating as a lookout to assist their drug deal. Santibanez testified Martinez was a visitor to his home, where Santibanez had baggies and scales for distributing drugs. Santibanez testified he told Martinez specifically of the details of the two-ounces of cocaine and one AK-47 for $2800 deal, before it occurred, and that Martinez chose to participate and profit with full knowledge of the scheme. When the United States asked Santibanez about each element on Martinez's indictment, one by one, Santibanez testified that each was true.

An FBI Task Force Officer explained how controlled buy operations work and how Martinez's drug deal unfolded. He testified that the time and place on the indictment were true. He presented the cocaine and the AK-47, to the jury. Trial Exhibits 1 and 2. The officer identified Martinez as the man captured on the video acting as the lookout.

An ATF Special Agent testified that he was present for an interview of Martinez, identified Martinez in the courtroom, and detailed Martinez's admissions. The United States published a recording of this post-Miranda interview. *See* Trial Exhibit 14. Martinez was asked to identify the man in Exhibit 18, and confessed he was the man on the video. Martinez admitted he was the source of the AK-47, and confessed to knowing "dope" was being bought or sold during that event. Some excerpts are quoted below:

> MARTINEZ: And when I looked at them, I just looked away. I didn't know.
> PETREE: Because you knew what was happening.
> MARTINEZ: I mean, anybody knows whenever that happens. Yeah.
> Exhibit 14; 25:03-25:25
> BOLAND: You knew he was selling cocaine.
> MARTINEZ: He was on dope so I didn't know if he was selling it or buying.
> […]
> BOLAND: You just said, I don't know if he was buying it or selling it.

**United States' Response in Opposition to**
**Francisco Martinez's Motion for Acquittal – Page 2**

> MARTINEZ: Yeah.
> BOLAND: You knew he was going to do something.
> MARTINEZ: He was gonna do something.
> BOLAND: With drugs.
> MARTINEZ: I didn't know what it was.
> BOLAND: With drugs.
> MARTINEZ: Either buy it for him or sell it to somebody else.

Exhibit 14; 57:55-58:30

Martinez's statements confirm what was apparent from Exhibit 11: he knew the scheme was a drug deal.

### II.     Martinez's Recollection of Evidence is Incorrect

Martinez argues outside the record in his Motion to Acquit with this characterization of the evidence: "Trial evidence shows that Santibanez sold the cocaine for the same amount as he typically did, the contemporaneous sale of the firearm did not discount or enhance the sale of the cocaine." ECF 68 at 8.  Santibanez testified he made $100 dollars more because of the sale of the AK-47, his share of what he testified was the $1200 price of the AK-47.  Special Agent Petree testified the AK-47 is worth approximately $600 and doubled in value only because it was sold illicitly in combination with cocaine instead of lawfully.  Martinez's claim that Martinez and Santibanez made no more money by combining the firearm and cocaine is incorrect.

Martinez claims in the Motion: "Santibanez did testify that he told Martinez about the drug deal but he readily admitted that despite meeting with the government and agents three times, the latest being the weekend before trial, he **never** told anyone that he told Martinez that he was doing a drug deal." ECF 68 at 9 *Emphasis added*.  This is misleading.  Santibanez testified he told law enforcement Martinez knew they were going to a drug deal, because Santibanez told Martinez specifically, before they went.  This interview was documented.  Santibanez told law enforcement of Martinez's knowledge of the cocaine deal on April 5, 2023, which is not "never."  Below is an excerpt of the report on Santibanez's April 5, 2023 interview, produced to Martinez in November 2023:

```
The defendant advised the AK-47 was supplied by "Cisco" and it was a "pass
thru," meaning Martinez was waiting on the money from the gun. The defendant
advised Martinez was waiting in the front passenger seat of the defendant's
vehicle during that transaction. The defendant advised Martinez knew without
question they were going to do a drug deal and the AK-47 was part of the
deal. The defendant also identified Martinez from the below still image from
the CI covert video from this transaction:
```

*See* Attachment A, Felipe Santibanez April 5, 2023 Interview Report. The defense also received an audio recording of this interview. Counsel opposite's argument is apparent: Santibanez is not credible because he never reported that Martinez had knowledge of the drug deal until undersigned asked on the day of trial. Under Rule 29, the credibility of the witnesses should be construed in the verdict's favor, and Attachment A proves that Santibanez's testimony is consistent with what he said 23 months prior to trial.

Martinez claims the only theory of conviction was under aiding and abetting. ECF 68 at 10. Aidor and abettor charges are implicit in all substantive criminal indictments. *United States v. Gordon*, 812 F.2d 965, 969 (5th Cir). Martinez summarizes his prosecution: "The Government hinges on the same facts, Martinez, supplying the firearm, was present in the car when Santibanez sold cocaine and the firearm, which Martinez supplied to Santibanez, to support Count Two." This is incorrect. The jury received testimony from every witness that Martinez was actively participating as a lookout in the drug deal before demanding his payment from Santibanez at the conclusion of the drug and gun sale. The United States argued Martinez's actions and admissions prove that Martinez participated actively and with knowledge.

The jury carefully considered this evidence and the Court's instructions. They made credibility choices when deliberating. They resolved competing interpretations of Martinez's interview and the video of the controlled-buy. The jury's verdict should not be disturbed.

### III. Standard of Review

A defendant seeking to overturn a jury's verdict "on the basis of insufficient evidence swims upstream." *United States v. Sanders*, 952 F.3d 263, 273 (5th Cir. 2020) ("In so doing, we

ask whether the verdict was reasonable, not whether it was correct."). Reviewing courts are "highly deferential to jury verdicts." *United States v. McNealy*, 625 F.3d 858, 870 (5th Cir. 2010). The legal standard applicable to a Rule 29 motion for judgment of acquittal has been described as the "rational jury standard." *United States v. Thomas*, 12 F.3d 1350, 1373 (5th Cir. 1994). When evaluating the Motion, "the 'relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Valle*, 538 F.3d 341, 344 (5th Cir. 2008) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

The Motion bears a heavy burden in meeting this high standard. *United States v. Achobe*, 560 F.3d 259, 263 (5th Cir. 2008). "The standard for a sufficiency claim is high." *Id.* The Court must give "the government the benefit of all reasonable inferences and credibility choices." *United States v. Carter*, 953 F.2d 1449, 1456 (5th Cir. 1992). Thus, the Court should deny the Motion unless it concludes, after viewing the evidence through the lens of this deferential standard, that a rational jury would necessarily have had to entertain a reasonable doubt as to Martinez's guilt. *See United States v. Burns*, 597 F.2d 939, 941 (5th Cir. 1979). Of course, the Court should consider all relevant evidence, direct or circumstantial. *See United States v. Loe*, 262 F.3d 427, 432 (5th Cir. 2001). "The standard does not require that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." *Id.* (internal citation omitted). This evidence includes Martinez's own words that he knew Santibanez was buying or selling "dope," testimony Martinez joined the scheme after it was explained to him, and Martinez's actions captured on video watching for witnesses to his crimes. A reasonable trier of fact could find this establishes, among the other elements, that Martinez understood he was participating in a drug deal. One straightforward construction of the evidence is that Martinez confessed after learning he was caught red-handed on video and confronted with the implausibility of his denial. "A jury is free to choose among

reasonable constructions of the evidence ... and it retains the sole authority to weigh any conflicting evidence and to evaluate the credibility of the witnesses." *Id.* Consider, with respect to Santibanez's credibility when he testified that Martinez knew about the drug deal before choosing to participate, "[i]t is not for the court ... to weigh evidence or assess the credibility of witnesses." *United States v. Deville*, 278 F.3d 500, 506 (5th Cir. 2002).

At trial, Martinez's defense offered a bold argument: that the jury should not believe their lying eyes and ears after observing a video of a crime and another of an admission. The jury considered this defense, weighed the evidence with time and care, reaching a reasonable verdict.

### THE CHARGE IN COUNT ONE, 18 U.S.C. 922(d)(10) IS CONSTITUTIONAL

Martinez also reurges his argument that 18 U.S.C. § 922(d)(10) is unconstitutional under the Second Amendment. He fails to specify whether he is claiming that the statute is unconstitutional on its face or as applied to him. The government assumes he is raising a facial challenge, however, because of the general nature of his argument and because he does not discuss the facts underlying his case. A facial challenge to a statue is the "most difficult challenge to mount successfully." *United States v. Salerno*, 481 U.S. 739, 745 (1987); *United States v. Contreras*, 125 F.4th 725, 729 (5th Cir. 2025). That's because, to prevail, the movant must show that the law cannot be constitutionally applied against anyone in any situation. *Contreras*, 125 F.4th at 729.

Martinez has failed to make this showing. In *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), the Supreme Court "reiterate[d]" the "standard for applying the Second Amendment." *Id.* at 24. It explained that "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Id*. And when a regulation burdens such presumptively protected conduct, "[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id*.

As for step one, we start with the Second Amendment's text: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II (the Amendment). The Supreme Court has recognized "the substance of the right: 'to keep and bear arms.'" *District of Columbia v. Heller*, 554 U.S. 570, 581 (2008). Drawing on *Heller* and *McDonald*, the Court reiterated in *Bruen* that the "plain text" of the Amendment—in particular, the right of the people to keep and bear arms—"guarantee[s] the individual right to possess and carry weapons in cases of confrontation." *Bruen*, 142 S. Ct. at 2127 (quoting *Heller*, 542 U.S. at 592).

But the plain text of the Amendment does not confer any right to sell, transfer, or otherwise dispose of a firearm. And several circuit courts have rejected attempts to stretch the Amendment's text to cover *sellers*. For example, the Sixth Circuit rejected a challenge to Section 922(d)*(1)* — which makes it unlawful to sell or dispose a firearm to someone who is under indictment for or has been convicted of a felony — because that court was "unable to find any historical indication that the Second Amendment encompasses such sales," and "[a]ll of the relevant caselaw supports the opposite conclusion." *United States v. Bacon*, 884 F.3d 605, 611 (6th Cir. 2018).

Similarly, the en banc Ninth Circuit held that nothing in the Amendment's text or history confers its protections on those seeking to sell firearms. *Teixeira v. County of Alameda*, 873 F.3d 670, 683 (9th Cir. 2017) (en banc) ("Nothing in the specific language of the Amendment suggests that sellers fall within the scope of its protection."); *id*. at 684 ("The historical record confirms that the right to sell firearms was not within the historical understanding of the scope of the Second Amendment right.") (internal quotation marks and brackets omitted). And a panel of the Fourth Circuit concluded likewise: "*Chafin* has not pointed this court to any authority, and we have found none, that remotely suggests that, at the time of its ratification, the Second Amendment was understood to protect an individual's right to *sell* a firearm." *United States v. Chafin*, 423 F. App'x 342, 344 (4th Cir. 2011) (emphasis in original).

Moreover, nothing in *Bruen* dictates a different result. Numerous district courts—considering motions to dismiss indictments based on *Bruen*—have concluded that the Amendment confers no right to sellers of firearms. *See United States v. Flores*, No. H-20-427, 2023 WL 361868, *2-4 (S.D. Tex. Jan. 23, 2023) (rejecting the argument the Amendment protects a person's right to deal firearms without a license); *United States v. Porter*, No. 3:22-055, 2023 WL 113739, at *3 (S.D.W. Va. Jan. 5, 2023) (rejecting *Bruen* challenge to Section 922(d)(1) because the argument "conflates the right to possess a firearm," which the Amendment protects, "with the right to sell and transfer it," which the Amendment does not); see also *United States v. Davis*, 2:22-CR-189, Report and Recommendation on Defendant's Motion to Dismiss, Dkt. No. 31 at 6-7 (E.D. Wis. filed Feb. 27, 2023) (rejecting defendant's argument that the Second Amendment extends to sellers or transferors). A district court in this Circuit acknowledged the lack of authority from this Court[1] on this question and noted that "pre-*Bruen* authority from other circuits is split." *United States v. Connelly*, No. EP-22-CR-229(2)-KC, 2023 WL 2806324, at *13 (W.D. Tex. Apr. 6, 2023).

Martinez has failed to demonstrate that 18 U.S.C. § 922(d)(10) is unconstitutional across the board. And even though Martinez has not raised an as-applied challenge, the statute is unquestionably constitutional as applied to him. Martinez sold or disposed of an AK-47 to another person (Santibanez) knowing full well that Santibanez intended to sell or dispose of it in furtherance of a drug-trafficking offense (the sale of cocaine). Martinez simply ignores the realities of his own case and speaks only about a person's (presumably a law-abiding citizen's) implied right to *purchase* firearms. But § 922(d)(10) only criminalizes selling or disposing of a firearm to another while knowing or having reasonable cause to believe that such person intends to sell or dispose of the firearm in furtherance of a felony, a federal crime of terrorism, or a drug-

---

[1] When the Fifth Circuit Court of Appeals considered a commercial retailer's Amendment challenge to a law prohibiting the sale of handguns to people under 21, it ruled that the Amendment protected the *purchasers*. *See NRA of Am. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185, 192, 199-200 (5th Cir. 2012), *abrogated on other grounds by Bruen*, 142 S. Ct. at 2127, 2127-31. Nothing in that opinion held that the Amendment protects a person's right to sell or dispose of firearms.

**United States' Response in Opposition to**
**Francisco Martinez's Motion for Acquittal – Page 8**

trafficking offense. In no sense does the Second Amendment protect the "right" to sell or dispose of a firearm, or for that matter, to purchase one, *to further illegal activity*. Accordingly, Martinez's claim fails at *Bruen*'s first step. *Cf. United States v. Reyes*, 677 F.Supp.3d 585, 592 (E.D. Tex. 2023) (finding that "the Second Amendment's plain text does not cover the conduct proscribed by 18 U.S.C. § 924(c)", whose "in furtherance" language "makes clear the Government must prove the firearm was possessed in relation to criminal conduct, *not self-defense*") (emphasis in opinion).

In any event, § 922(d)(10) is consistent with the Nation's historical tradition of firearm regulation." *Id*. Since the colonial era, governments have "substantially controlled the firearms trade." *Teixeira*, 873 F.3d at 685. In *Teixeira*, the en banc Ninth Circuit surveyed the history of those laws. Notably, the Court found that "[a]t least two colonies" controlled "where settlers could transport or sell guns." *Id*. "Connecticut banned the sale of firearms by its residents outside the colony." *Id*. (citing 1 Trumbull, Public Records of the Colony of Connecticut, 138–39, 145–46). Virginia law provided that residents were at "'liberty to sell armes and ammunition to any of his majesties loyall subjects inhabiting this colony.'" *Id*. at 685 n.18 (emphasis added) (quoting Laws of Va., Feb., 1676–77, Va. Stat. at Large). And at least six colonies made it a crime (with severe penalties) to sell or provide firearms or ammunition to Native Americans. *Id*. at 685 (citing 17th-century laws from Massachusetts, Connecticut, Maryland, and Virginia); see also 6 Statutes at Large of Pennsylvania from 1682 to 1801 at 319-320 (1899) (1763 law); Laws and Ordinances of New Netherland, 1638-1674 (1868) at 18-19 (1639 ordinance), 47 (1645 ordinance), 278 (1656 ordinance). Restrictions of this kind did not violate the Amendment. At the time of the founding, "no contemporary commentary suggests that the right codified in the Second Amendment independently created a commercial entitlement to sell guns if the right of the people to obtain and bear arms was not compromised." *Teixeira*, 873 F.3d at 686.

Consistent with this Founding Era tradition, states enacted laws governing the manufacture, sale, and transport of guns and/or gunpowder in the 18th and 19th centuries. *See*

Robert Spitzer, Gun Law History in the United States and the Second Amendment Rights, 80 Law & Contemp. Probs. 55, 74 (2017). "For example, Florida (1927), Georgia (1902), and North Carolina (1905) gave localities the power to license, regulate, or even bar the commercial sale of firearms." *Id*. at 75 (citing Act of June 6, 1927, ch. 12548, § 19(13), 1927 Fla. Laws 206, 212, Act of Dec. 18, 1902, part III, tit. I, no. 192, § 16, 1902 Ga. Laws 427, 434-35, and Act of Mar. 6, 1905, ch. 188, § 6, 1905 N.C. Sess. Laws 545, 547.) A 1927 New Jersey law "prohibited pawn brokers from selling or in any manner transferring any firearms." *Id*. (citing Act of Mar. 30, 1927, ch. 321, § 1, 1927 N.J. Laws 742, 742). Therefore, "there are sufficient historical analogues of regulating the sale and transfer of firearms" to Section 922(d)(10)'s constitutionality at *Bruen's* second step. *United States v. Porter*, No. 3:22-CR-055, Memorandum Opinion and Order, Dkt. No. 47 at 6 (S.D. W. Va. Filed Jan. 5, 2023).

The Sixth Court of Appeals recently resolved a similar case, where video of controlled sales of methamphetamine showed the simultaneous possession of a firearm. *United States v. Risner*, 129 F.4th 361(6th Cir. 2025). When upholding a 924(c) conviction, that court discussed the nation's tradition of preventing criminals from using firearms when they commit crimes, and in particular, trafficking in narcotics. *Id* at 368. The reasoning was straightforward: "It is not a far stretch to conclude that one who must arm himself due to the very danger of the crime in which he is involved is, by virtue of that fact, also dangerous." *Id.* at 369. Because the "nation's history and tradition demonstrate that Congress may disarm individuals they believe are dangerous," laws barring the use of firearms to further drug distribution (such as both counts of this indictment) fit "within the history and tradition of gun regulation in this country." *Id.* A concurring opinion explains that the important rights in the Second Amendment do not stand in the way of common sense, because "[a]fter all, as John Jay put it, "[a]mong the many objects to which a wise and free people find it necessary to direct their attention, that of providing for their safety seems to be the first." *Id.* quoting The Federalist No. 3, at 10.

*Bruen* emphasized that the government need only identify a "historical analogue, not a historical twin." *Bruen*, 142 S. Ct. at 2133. As explained above, Section 922(d)(10) and the historical laws are "relevantly similar," *id*. at 2132, because they restricted the sale of firearms generally and the sale of firearms to certain groups specifically. Moreover, the lack of an identical historical statute does not suggest that the founding generation would have viewed Section 922(d)(10) as violating the Amendment. As one district court recently observed, a "list of the laws that happened to exist in the founding era is . . . not the same thing as an exhaustive account of what laws would have been theoretically believed to be permissible by an individual sharing the original public understanding of the Constitution." *United States v. Kelly*, No. 3:22-CR-37, 2022 WL 17336578, at *2 (M.D. Tenn. Nov. 16, 2022). Founding-era legislatures cannot be presumed to have legislated to the full limits of their constitutional authority. Finally, drug traffickers fall outside the overarching class of "law-abiding, responsible citizens' covered by the Amendment. *See Rahimi,* 61 F.4th 443 at 452. Though Section 922(d)(10) does not impair any protection of the Amendment, it is also consistent with the Nation's historical tradition of regulating firearms.

### 18 U.S.C. § 922(d)(10) GIVES FAIR AND DEFINITE NOTICE OF THE CRIME

Martinez concedes in his 'void for vagueness' argument in his Motion for Acquittal that the United States must prove scienter. ECF 68 at 6. The drug offense need not be proven. The true intentions of the buyer need not be proven. Section 922(d)(10) permits the prosecution of a sting operation target. Martinez's claim that a legitimate gun seller could be prosecuted under § 922(d)(10) because a gun buyer could commit drug trafficking in the future is wide of the mark. To prove scienter, the government must prove that the defendant sold or disposed of a firearm or ammunition to a person knowing or having reasonable cause to be believe that the person receiving the firearm intends to sell or dispose of it in furtherance of the specified types of offenses. While the situations in which a person will be prosecuted under subsection (d)(10) may well be rare, that does not make the statute unconstitutionally vague.

For a statute to be unconstitutionally vague, it "must be impermissibly vague in all its applications, including its application to the party bringing the vagueness challenge[.]" *United States v. Clark*, 582 F.3d 607, 612-13 (5th Cir. 2009) (cleaned up). And when considering whether a law is vague in all of its applications a court examines the complainant's conduct first because a person "who engages in some conduct that is *clearly* proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Id.* at 613 (cleaned up) (emphasis in opinion). Such an analysis dooms Martinez's vagueness challenge here because his conduct fit the conduct proscribed by § 922(d)(10) to a T. The evidence presented at trial showed that Martinez sold or disposed of an AK-47 to Santibanez knowing that Santibanez intended to sell or dispose of it to another person as part of drug deal — that is, to further a drug-trafficking offense. Because "constitutionally protected conduct is not threatened and 'at least some of [the defendant's] conduct is clearly proscribed' by the statute under review, it cannot be void for vagueness." *Id.* (quoting *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 547 (5th Cir. 2008)).

**COUNTS ONE AND TWO OF THE INDICTMENT ARE DISTINCT**

Martinez argues that "Count One and Count Two do not require proof of a fact that the other does not." ECF 68 at 7. Martinez disputed that cocaine was a Schedule II controlled substance. ECF 58. Had the United States been unable to prove this element, Martinez would be guilty of 18 USC § 922(d)(10), but not of 18 USC § 924(c), because this disputed element is only required for the latter.

Referring to the jury instructions, to violate Section 922(d)(10), no actual drug trafficking crime need be proven, unlike Section 924(c). In this case, helping commit drug trafficking, as Martinez did, is *sufficient* to reach reasonable cause to believe the other parties are drug traffickers, but it is not *necessary* to satisfy the elements of this crime. And of course, to commit 18 U.S.C. § 924(c), the Count Two offense, one need not *sell* a firearm. In determining whether Congress intended to punish as separate offenses conduct occurring in the same transaction, absent otherwise clearly expressed intent, courts apply the rule announced in *Blockburger v.*

*United States*, 284 U.S. 299, 304 (1932): "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."  One criminal episode can result in multiple criminal violations, even if the conduct is related.  Applying *Blockburger,* the Supreme Court found an act of selling narcotics may violate three distinct criminal statutes. *Gore v. United States*, 357 U.S. 386 (1958).

**CONCLUSION**

For all these reasons, Defendant's Motion for Acquittal should be denied.

Respectfully submitted,

ABE MCGLOTHIN, JR.
Acting United States Attorney

*/s/ Dustin R. Farahnak*
DUSTIN R. FARAHNAK
Assistant United States Attorney
Texas State Bar No. 24115528
110 N. College, Ste. 700
Tyler, TX  75702
(903) 590-1400

**Certificate of Service**

    I hereby certify that on April 1, 2025, I filed this motion with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the Counsel of Record for the Defendant.

                                    **/s/ Dustin Farahnak**
                                    DUSTIN FARAHNAK
                                    Assistant U.S. Attorney