IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | § | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| | § | |
| v. | § | Case No. 6:23-cr-114-JDK |
| | § | |
| | § | |
| FRANCISCO MARTINEZ | § | |
| | § | |

**MEMORANDUM OPINION AND ORDER DENYING
POST-TRIAL MOTIONS**

On March 5, 2025, a jury found Defendant Francisco Martinez guilty on two counts of firearms violations. Docket No. 66. Count One charged Martinez with disposing of a firearm—an AK-47 style assault rifle—by transferring it to a person knowing, or having reasonable cause to believe, that the person intended to sell or dispose of the firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 922(d)(10). Docket No. 1. Count Two charged Martinez with knowingly aiding and abetting in the use and possession of a firearm during and in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). *Id.*

Now before the Court are two motions filed by Martinez. *First*, Martinez's motion to dismiss the indictment. Docket No. 44. The Government filed the indictment on October 18, 2023. Martinez, however, did not file this motion until February 11, 2025, just three weeks before trial. Pursuant to Federal Rule of Criminal Procedure 12(d), the Court found good cause to defer ruling on the motion given the constitutional arguments raised, the fact that Martinez waited until mere

1

weeks before trial to file the motion, and the insufficient time to fully and adequately resolve the arguments. *Second*, Martinez's motion for acquittal, which reurges several arguments from the motion to dismiss in addition to arguing that the evidence was insufficient to convict him under either Count. Docket No. 68. Accordingly, the Court considers both motions together.

In the motions, Martinez argues (1) § 922(d)(10) violates the Second Amendment; (2) § 924(c) violates the Second Amendment; (3) § 922(d)(10) is void for vagueness; (4) Counts One and Two are multiplicitous; (5) the evidence was insufficient as to Count One; and (6) the evidence was insufficient as to Count Two. Docket Nos. 44; 68.

As explained below, the Court finds Martinez's arguments lack merit and therefore **DENIES** the motions (Docket Nos. 44; 68).

## I.

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend. II. "Like most rights, the right secured by the Second Amendment is not unlimited." *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008). The Supreme Court recently clarified the framework for determining when a statute or regulation unconstitutionally infringes on that right. *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022); *United States v. Rahimi*, 602 U.S. 680 (2024). "First, courts must determine whether 'the Second Amendment's plain text covers an individual's conduct.'" *Reese v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 127 F.4th 583, 588 (5th Cir. 2025) (quoting *Bruen*, 597 U.S.

at 24). "If so, the Constitution presumptively protects that conduct, and the government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* (quoting *Bruen*, 597 U.S. at 24) (cleaned up).

For the purpose of Martinez's as-applied challenges, the Court finds that the following facts, among others, were sufficiently established based on the evidence at trial: Martinez agreed to sell his firearm to Felipe Santibanez, who then sold the firearm in furtherance of a drug-trafficking offense (the sale of cocaine). Martinez knew that Santibanez intended to sell the firearm in a cocaine transaction. Martinez helped further the drug transaction by accompanying Santibanez and serving as a lookout during the transaction. Applying *Bruen*'s two-step framework to Martinez's Second Amendment challenges, the Court determines that neither (A) § 922(d)(10) nor (B) § 924(c) is unconstitutional as applied to Martinez.[1]

### A.

Section 922(d)(10) makes it unlawful "for any person to sell or otherwise dispose of any firearm . . . to any person knowing or having reasonable cause to believe that such person . . . intends to sell or otherwise dispose of the firearm . . . in furtherance of a felony . . . or a drug trafficking offense." Martinez claims that this provision violates the Second Amendment because the "sale" of a firearm is covered

---

[1] Martinez does not specify whether he raises a facial or as-applied constitutional challenge to the statutes. *See* Docket Nos. 44; 68. Assuming he is raising both, the Court considers the as-applied challenges first. *See Buchanan v. Alexander*, 919 F.3d 847, 853 (5th Cir. 2019) ("When a litigant brings both as-applied and facial challenges, we generally decide the as-applied challenge first because it is the narrower consideration."). And because the Court rejects the as-applied challenges, as explained below, the Court need not address Martinez's facial challenges. *See United States v. Diaz*, 116 F.4th 458, 471–72 (5th Cir. 2024).

3

by the Amendment's plain text and because the Government has not shown that the provision is consistent with the Nation's historical tradition of firearm regulation. Docket No. 68 at 3–5; Docket No. 44 at 1–2.

The Court addresses each point below.

### 1.

The Court begins with step one of *Bruen*—whether the plain text of the Second Amendment covers the sale of a firearm. The Court holds that it does.

Although "the words 'purchase,' 'sale,' or similar terms describing a transaction do not appear in the Second Amendment," *Reese*, 127 F.4th at 589–90, "[c]onstitutional rights . . . implicitly protect those closely related acts necessary to their exercise," *Luis v. United States*, 578 U.S. 5, 26 (2016) (Thomas, J., concurring); *cf.* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 96 (2012) ("[W]hen a text authorizes a certain act, it implicitly authorizes whatever is a necessary predicate of that act."). Accordingly, the Fifth Circuit recently held in *Reese* that "the right to 'keep and bear arms' surely implies the right to purchase them." 127 F.4th at 590. "[C]onstitutional rights impliedly protect corollary acts necessary to their exercise," the court explained, and thus the Second Amendment covers "commercial purchases." *Id.* Otherwise, "limitations on sales could easily displace the right altogether." *Id.* For the same reasons, the Second Amendment surely covers the right to sell a firearm; indeed, protecting the right to purchase means little if nobody has the right to sell.

The Government's argument to the contrary is unpersuasive. First, the Government ignores *Reese*, which is telling. It then points to several circuits that

4

have "rejected attempts to stretch the [Second] Amendment's text to cover *sellers*." Docket No. 69 at 7 (collecting cases from the Fourth, Sixth, and Ninth Circuits). But those cases were decided between 2011 and 2018—long before *Bruen* and *Rahimi* dramatically altered the Second Amendment landscape.

The Government next suggests that the "conduct" covered by the text of the Second Amendment should be defined narrowly to fit the precise conduct regulated by § 922(d)(10)—something like "selling a firearm to a drug trafficker." *See* Docket No. 56 at 2 ("Selling a gun to a drug dealer is obviously not conduct mentioned in or protected by the Second Amendment . . . ."). But this impermissibly conflates the two steps of *Bruen*. It is "fundamentally inconsistent with the *Bruen/Rahimi* framework" to define the conduct narrowly (and consequentially find it not covered by the Second Amendment) using a targeted application of § 922(d)(10). *See Reese*, 127 F.4th at 590. The Court declines the Government's invitation to limit the right to bear arms in such a way. *See id.* ("The baleful implications of limiting the right at the outset by means of narrowing regulations not implied in the text are obvious; step by step, other limitations on sales could easily displace the right altogether.").

### 2.

Because firearm sales are covered by the plain text of the Second Amendment, "the Constitution presumptively protects that conduct." *Bruen*, 597 U.S. at 24. Accordingly, in step two the Government bears the burden of establishing that § 922(d)(10)'s restriction on the sale of firearms is "consistent with the Nation's historical tradition of firearm regulation." *Id.* Ultimately, the Court "must ascertain

whether the new law is 'relevantly similar' to laws that our tradition is understood to permit." *Rahimi*, 602 U.S. at 692 (quoting *Bruen*, 597 U.S. at 29).

Central to the Court's "analogical inquiry are '*why* and *how* the regulation burdens the right.'" *Reese*, 127 F.4th at 595–96 (quoting *Rahimi*, 602 U.S. at 692). This involves asking whether § 922(d)(10) imposes a "comparable burden" on the right, "whether that burden is comparably justified," whether the regulation is for a similarly "permissible reason," and whether the scope of the regulation extends "beyond what was done at the founding." *Id.* at 596 (quoting *Bruen* and *Rahimi*).

The Government meets its burden. The predominant "why and how" of § 922(d)(10)'s regulatory burden, as the Government puts it, is to prevent firearms from being distributed to dangerous individuals (drug traffickers) or in furtherance of illegal drug distribution. *See* Docket No. 69 at 8–10; Docket No. 56 at 2. The Government cites several examples of firearm regulation to show that § 922(d)(10) is consistent with the Nation's historical tradition of regulating firearms. *See* Docket No. 69 at 9–10. The Court agrees it is, at least as applied to Martinez.

Two categories of traditional firearm regulation are "relevantly similar" to § 922(d)(10)'s prohibition on Martinez selling a firearm to Santibanez, an individual Martinez knew (or had reasonable cause to believe) intended to sell it in furtherance of a drug trafficking offense. *See Rahimi*, 602 U.S. at 692. Each is addressed in turn.

*First*, this Nation has a long history of disarming criminals or dangerous individuals. *See Diaz*, 116 F.4th at 470 (discussing the "public understanding" around the Second Amendment's ratification that "the government could prevent

6

people who had committed crimes or were 'quarrelsome' from accessing weapons"); *Rahimi*, 602 U.S. at 698 (holding that the Nation's history of firearm regulation confirms that if "an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed"); *see generally* Joseph Greenlee, *The Historical Justification for Prohibiting Dangerous Persons From Possessing Arms*, 20 WYO. L. REV. 249, 270–75 (2020) (discussing nineteenth and twentieth century firearm prohibitions). Indeed, several provisions in § 922(g), which prohibit possession of firearms for certain dangerous individuals or criminals, have been upheld as constitutional. *See, e.g.*, *United States v. Connelly*, 117 F.4th 269, 282 (5th Cir. 2024) (finding § 922(g)(3) constitutional because our tradition of firearm regulation shows that a presently intoxicated person can be disarmed); *Rahimi*, 602 U.S. at 702 (finding a provision of § 922(g)(8) constitutional because our tradition of firearm regulation shows that an individual found to pose a threat to the safety of another may be temporarily disarmed); *Diaz*, 116 F.4th at 472 (finding § 922(g)(1) constitutional because our tradition of firearm regulation shows that an individual convicted of certain crimes—like theft—could be disarmed).

Here, Martinez sold a firearm to Santibanez, an individual involved in illegal drug trafficking. Drug trafficking—involving cocaine particularly—is both illegal and dangerous. *See United States v. Risner*, 129 F.4th 361, 369 (6th Cir. 2025) (explaining that drug trafficking is both "unlawful" and "dangerous"). Accordingly, the Government may prohibit drug traffickers from possessing firearms consistent with the Nation's tradition of firearm regulations. And if the Government can

7

prevent the *possession* of firearms by such individuals, the Government can necessarily prevent the *sale* of firearms to those same individuals. *See Connelly*, 117 F.4th at 283 (explaining that if the Government can prohibit the *possession* of firearms by someone unlawfully using controlled substances, it follows that the Government can prohibit the *transfer* of firearms to the same individual).

*Second*, this Nation has a long history of regulating firearm sales, and even limiting sales to specific groups of people, in furtherance of public safety. *See Heller*, 554 U.S. at 626–27 (noting the longstanding tradition of "laws imposing conditions and qualifications on the commercial sale of arms"). History is replete with laws prohibiting firearm sales to groups like non-permit holders and pawn brokers, as well as other prohibitions that local governments deemed appropriate. *See* Robert Spitzer, *Gun Law History in the United States and Second Amendment Rights*, 80 LAW & CONTEMP. PROBS. 55, 75 (2017) (collecting state laws in the early Twentieth century). Several laws regulated the manufacture, sale, transport, and storage of gunpowder. *See id.* at 74 (citing state laws between the Eighteenth and Twentieth centuries). Regulations on the sale of firearms reach as far back as 1652, when a New York law outlawed "illegal trading of guns, gun powder, and lead by private individuals." *Id.* at 76. Martinez's own cited authority, moreover, further evidences the tradition of regulating firearm sales. *See* Docket No. 68 at 4 (citing *Teixeira v. County of Alameda*, 873 F.3d 670 (9th Cir. 2017) (en banc)). *Teixeira* noted that "colonial governments substantially controlled the firearms trade." 873 F.3d at 685. The court also identified examples of colonial regulation banning firearm sales to certain groups like

8

Indian tribes or residents outside the colony. *Id.* In short, "[i]n 1791—and for well more than a century afterward—legislatures disqualified categories of people from the right to bear arms only when they judged that doing so was necessary to protect the public safety." *Kanter v. Barr*, 919 F.3d 437, 541 (7th Cir. 2019) (Barrett, J., dissenting).

Taken together, the Nation's tradition of laws disarming criminals and dangerous individuals, along with the history of regulating the sale of firearms in the interest of public safety, confirm what common sense suggests: in the interest of public safety, the Government may prohibit firearm sales to individuals (often drug traffickers) who intend to resell or dispose of the firearm in furtherance of drug trafficking. *Cf. Rahimi*, 602 U.S. at 698 ("Taken together, the surety and going armed laws confirm what common sense suggests: When an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed.").

A jury found that Martinez sold a firearm to Santibanez (a known drug trafficker) whom Martinez knew or had reasonable cause to believe would sell the firearm in furtherance of a drug trafficking offense. Accordingly, § 922(d)(10) is not unconstitutional as applied to Martinez.

**B.**

Section 924(c) states that "any person who, during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm" shall be sentenced to five years' imprisonment. Martinez argues that this provision also violates the Second Amendment. Docket No. 44 at 4–5.

9

Before addressing the merits, the Court considers waiver. Where a party inadequately briefs an issue, it results in waiver of that argument. *Thomas v. Cognizant Tech. Sols. US Corp.*, 2024 WL 2331751, at *4 (N.D. Tex. May 22, 2024) (explaining that just as failure to brief an issue at the Fifth Circuit results in waiver on appeal, so too does failure to brief an argument to the district court).

Martinez makes no effort to brief his § 924(c) argument. In his motion to dismiss, he simply "urges this argument in order to preserve the issue for possible future review" and acknowledges that another court recently rejected the argument that § 924(c) violates the Second Amendment. Docket No. 44 at 5 (citing *United States v. Reyes*, 677 F. Supp. 3d 585 (E.D. Tex. 2023)). Martinez then fails to reurge the § 924(c) argument in his motion for acquittal. Accordingly, the Court finds that Martinez has waived his Second Amendment challenge to § 924(c).

Nevertheless, the Court briefly explains why the argument fails on the merits. The same analytical framework from *Bruen* and *Rahimi* applies.

### 1.

At step one of *Bruen*, the Court determines whether the plain text of the Second Amendment covers the individual's conduct. Section 924(c) prohibits the use or carrying of a firearm during or in furtherance of a drug trafficking crime.

It is uncertain whether the conduct described by § 924(c) is covered by the text. Several district courts have held that it is not, finding that the Second Amendment protects the right to keep arms *for self-defense* and not, as § 924(c) requires, *to further unlawful activity*. *See Reyes*, 677 F. Supp. 3d at 592; *United States v. Harbin*, 2025 WL 97646, at *4 (W.D. Tex. Jan. 9, 2025). As described above, however, that seems

10

to narrowly define the regulated conduct at the outset, improperly conflating the first and second steps of *Bruen*. *See Reese*, 127 F.4th at 90. In this Court's view, the conduct covered by § 924(c) is properly framed as the carrying or use of a firearm—conduct unquestionably covered by the Amendment's text. But the Court need not address step one of *Bruen* because, as explained below, the Government meets its burden at step two. *See United States v. Quiroz*, 125 F.4th 713, 717 (5th Cir. 2025) (skipping step one of *Bruen* because the Government met its burden at step two).

### 2.

The Government meets its burden at step two by showing that § 924(c) is consistent with this Nation's tradition of firearm regulation. The "why and how" of § 924(c) is to prevent criminals from using firearms when they commit crimes—such as drug trafficking—and to prevent the use of firearms to further drug distribution. *See* Docket No. 69 at 10. To meet its burden, the Government relies on many of the same historical analogues cited above regarding § 922(d)(10) while also relying heavily on a recent Sixth Circuit decision upholding § 924(c)'s constitutionality. *Id.* (citing *Risner*, 129 F.4th 361).

Firearm regulations prohibiting the carrying and use of firearms in furtherance of drug trafficking crimes are consistent with the Nation's tradition of firearm regulation. As the Court has already explained, dangerous individuals such as drug traffickers may be disarmed. *Supra* Section I.A. And "[i]t is not a far stretch to conclude that one who must arm himself due to the very danger of the crime in which he is involved is, by virtue of that fact, also dangerous." *Risner*, 129 F.4th at 369. Judge Thapar, moreover, has explained that "American history provides many

11

examples" of laws that, like § 924(c), criminalize the use or carrying of a firearm in furtherance of another crime. *Id.* at 369–70 (Thapar, J., concurring) (discussing laws criminalizing the infliction of terror while armed, the use of a dangerous weapon while robbing a postal carrier, the use of a dangerous weapon while committing burglary, and breaking and entering while armed with a dangerous weapon). Similar examples abound. *See Rahimi*, 602 U.S. at 693–94 (describing prohibitions on "riding or going armed with dangerous or unusual weapons to terrify the good people of the land" (cleaned up) (quoting 4 BLACKSTONE 149)); *Diaz*, 116 F.4th at 470 (collecting "colonial-era statutes that prohibited going armed offensively and authorized forfeiture of weapons as punishment").

A jury found that Martinez aided and abetted the use or carrying of a firearm in furtherance of a drug trafficking offense by knowingly accompanying Santibanez to a drug transaction, supplying a firearm for the deal, and acting as a lookout. This is consistent with "America's tradition of criminalizing the use of a gun to commit a crime." *See Risner*, 129 F.4th at 361 (Thapar, J., concurring). "Section 924(c)(1)(A)'s prohibition on using or carrying a firearm while committing a crime of violence or drug trafficking crime doesn't depart from that historical practice." *Id.* Accordingly, § 924(c) is not unconstitutional as applied to Martinez.

\* \* \*

For the reasons stated above, the Court finds that neither § 922(d)(10) nor § 924(c) violates Martinez's Second Amendment right.

## II.

Martinez next argues that § 922(d)(10) is void for vagueness. Docket No. 68 at 6–7; Docket No. 44 at 2–3. The Court disagrees.

An individual's Fifth Amendment right to due process is violated "under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015). To be unconstitutionally vague, a criminal statute "must be impermissibly vague in all its applications, including its application to the party bringing the vagueness challenge." *United States v. Clark*, 582 F.3d 607, 612–13 (5th Cir. 2009) (cleaned up). "Objections to vagueness under the Due Process Clause rest on the lack of notice and hence may be overcome in any specific case where reasonable persons would know that their conduct is at risk." *Id.* at 613 (quoting *Maynard v. Cartwright*, 486 U.S. 356, 361 (1988)).

"When considering whether a statute is vague in all its applications, 'a reviewing court should examine the complainant's conduct *before* analyzing other hypothetical applications of the law because a [party] who engages in some conduct that is *clearly* proscribed cannot complain of the vagueness of the law as applied to the conduct of others.'" *Id.* (quoting *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 546 (5th Cir. 2008)). Accordingly, the Court begins by analyzing § 922(d)(10)'s application to Martinez's conduct here.

As noted, § 922(d)(10) makes it unlawful to sell (or otherwise dispose of) a firearm to any person knowing that such person intends to sell the firearm in furtherance of a drug trafficking offense. The application of that statute to Martinez's

13

conduct here is perfectly clear: Martinez sold an AK-47-style assault rifle to Santibanez, a known drug-dealer, knowing that Santibanez intended to sell the rifle in furtherance of a cocaine transaction. *See infra* Section IV.A. Nor is there any reason to conclude that Martinez lacked notice that his conduct was illegal. Indeed, Martinez accompanied Santibanez to the transaction in the parking lot of a local grocery store and served as a lookout—further evidencing his knowledge of Santibanez's intent and his own understanding that the transaction was illegal. Accordingly, Martinez's behavior falls "squarely within the scope of the statute" and cannot support a vagueness challenge. *See Clark*, 582 F.3d at 614.

Martinez argues that "the statute is vague because it does not specify a temporal connection" and therefore a firearm seller is "forever subject" to § 922(d)(10). *See* Docket No. 68 at 6. But Martinez fails to address how "the statute is vague *in his case.*" *See Clark*, 582 F.3d at 614. And Martinez's "temporal connection" argument ignores the five-year default limitations period for federal crimes. *See* 18 U.S.C. § 3282. Martinez also contends that "reasonable cause to believe" is "extremely vague." Docket No. 44 at 3. But there is nothing unconstitutionally vague about a criminal statute including a scienter element of "know or have reasonable cause to believe." *See United States v. Brooks*, 611 F.2d 614, 617 (5th Cir. 1980) (rejecting a vagueness challenge to a criminal statute because it was "clear with respect to the requisite mental state of the seller," which was "knows or has reasonable cause to believe"), *overruled on other grounds by United States v. Henry*, 749 F.2d 203 (5th Cir. 1984).

14

Martinez's vagueness argument fails.

### III.

Martinez also argues that Counts One and Two are multiplicitous. Docket No. 68 at 7–8; Docket No. 44 at 3–4. Again, the Court disagrees.

A "multiplicity" problem exists "when a defendant is punished twice for the same conduct." *United States v. Sanjar*, 876 F.3d 725, 737 (5th Cir. 2017). Because "this doctrine is derived from the Double Jeopardy Clause, it looks to the *Blockburger* test." *Id.* Under the *Blockburger* test, "[t]o determine whether two related offenses are the 'the same offense' for double jeopardy purposes, courts ask 'whether each provision requires proof of a fact which the other does not.'" *United States v. Cooper*, 38 F.4th 428, 436 n.3 (5th Cir. 2022) (quoting *Blockburger v. United States*, 284 U.S. 299, 304 (1932)).

There is no multiplicity issue here because Counts One and Two each required the Government to prove a fact which the other did not. Count One required the Government to prove that Martinez *sold or disposed of* a firearm. Docket No. 64 at 13. Count Two did not. Count Two required the Government to prove that Martinez aided in the commission of a cocaine transaction and that a firearm was "carried" or "used" during and in relation to, or in furtherance of, that transaction. *Id.* at 14. In other words, Count Two required the Government to prove that an underlying drug trafficking crime occurred. Count One did not. Rather, Count One required the Government to prove only that Santibanez *intended* to sell or dispose of a firearm in furtherance of a drug trafficking crime, not that the underlying drug crime occurred.

15

Counts One and Two are not multiplicitous.

## IV.

Finally, Martinez argues that the evidence is insufficient to support a conviction as to both Counts One and Two. Docket No. 68 at 8–10. This argument is meritless.

Federal Rule of Criminal Procedure 29(c) permits a defendant to move for a judgment of acquittal after a guilty verdict. The "relevant question" in deciding a Rule 29 motion "is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Valle*, 538 F.3d 341, 344 (5th Cir. 2008) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *see also United States v. Hernandez-Palacios*, 838 F.2d 1346, 1348 (5th Cir. 1988) (explaining that courts must "giv[e] the Government the benefit of all reasonable inferences and credibility choices"). "The standard for a sufficiency claim is high." *United States v. Achobe*, 560 F.3d 259, 263 (5th Cir. 2008); *see also United States v. Moreno-Gonzalez*, 662 F.3d 369, 372 (5th Cir. 2011) ("Our review of the sufficiency of the evidence is 'highly deferential to the verdict." (quoting *United States v. Harris*, 293 F.3d 863, 869 (5th Cir. 2002))). "The jury's constitutional role in deciding criminal trials leaves little room for judicial second-guessing." *United States v. Crittenden*, 46 F.4th 292, 296 (5th Cir. 2022) (en banc). Review of a jury verdict is therefore "quite limited." *Id.* (quoting *Burks v. United States*, 437 U.S. 1, 16 (1978)); *see also Moreno-Gonzalez*, 662 F.3d at 372 ("We must ensure that our inquiry is 'limited to whether the jury's verdict was reasonable, not whether we believe it to be correct.'" (quoting *United States v.*

*Williams*, 264 F.3d 561, 576 (5th Cir. 2001))). "It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt." *United States v. Lage*, 183 F.3d 374, 382 (5th Cir. 1999).

As explained below, there is substantial evidence to support a conviction as to both (A) Count One and (B) Count Two.

### A.

As to Count One, Martinez argues that "insufficient evidence exists to establish that [he], at the time of the disposal knew or had reasonable cause to believe that Santibanez intended to sell or dispose of the firearm in furtherance of a drug trafficking offense." Docket No. 68 at 8. But Martinez ignores the overwhelming evidence to the contrary.[2]

The Government presented evidence that Martinez met up with Santibanez, a known drug dealer, earlier in the day to sell him an AK-47-style rifle. *See* GX-15 at 22 (Martinez stating he knew Santibanez was previously arrested for drug crimes), 83 (Martinez stating he knew Santibanez was a drug user and was either selling or buying drugs at the transaction). Martinez then accompanied Santibanez—and the firearm—to the parking lot of a grocery store where the drug transaction occurred. Martinez served as a lookout and warned Santibanez of a potential witness during the transaction. *See* GX-11 (video of the drug transaction); GX-13 (transcript of the drug transaction). Santibanez testified, moreover, that he *told* Martinez about the

---

[2] By highlighting examples of sufficient evidence, the Court does not purport to set out an exhaustive list. Additional evidence supported the jury's verdict as to Count One.

transaction in advance of their arrival, that Martinez knew the transaction would include cocaine, and that Martinez assisted the drug trafficking crime by serving as a lookout. In fact, Martinez's own statements in a post-*Miranda* interview suggest that he knew that Santibanez was going to the grocery store parking lot for the purpose of committing a drug trafficking crime. *See* GX-14 (video of interview); GX-15 (transcript of interview). During the interview, Martinez admitted that "[Santibanez] was on dope so I didn't know if he was selling it or buying," and that Santibanez would "either buy [drugs] for him[self] or sell [drugs] to somebody else." GX-14 at 57:55-58:30; GX-15 at 83.

In light of this evidence, a reasonable juror could easily conclude that Martinez knew or had reason to know that Santibanez intended to sell or dispose of the firearm in furtherance of a drug trafficking offense. Martinez claims that "[t]rial evidence shows that Santibanez sold the cocaine for the same amount as he typically did" and that "the contemporaneous sale of the firearm did not discount or enhance the sale of the cocaine." Docket No. 68 at 8. This is false. Santibanez testified that he profited $100 more from the cocaine deal than he would have without the firearm.

As the Fifth Circuit has cautioned, "[t]he jury's constitutional role in deciding criminal trials leaves little room for judicial second-guessing." *Crittenden*, 46 F.4th at 296. Accordingly, Martinez's motion for acquittal based on insufficiency of the evidence as to Count One is denied.

### B.

As to Count Two, Martinez argues that "[e]vidence presented at trial is insufficient to support an aiding and abetting theory." Docket No. 68 at 10.

Specifically, Martinez argues that even if he had knowledge of the drug deal prior to its occurrence, the evidence does not establish his intent to aid and abet in the furtherance of the underlying drug trafficking offense. *Id.* The Court disagrees.

As noted above, witness testimony established that Martinez was actively participating in the drug transaction by serving as a lookout. *See Rosemond v. United States*, 572 U.S. 65, 77 (2014) (explaining that the "intent requirement" for aiding and abetting is "satisfied when a person actively participates in a criminal venture with full knowledge of the circumstances constituting the charged offense"). There was also testimony that Martinez's firearm made the cocaine transaction more valuable. And Special Agent Petree testified that the "legitimate" value of Martinez's firearm if purchased from a licensed gun dealer is about $600–700. But Martinez sold the firearm at "street" value for $1,200, profiting nicely by selling it in a drug transaction.

From this evidence, the jury could reasonably conclude that Martinez possessed the requisite intent to be convicted for violating § 924(c) under an aiding and abetting theory. *See id.* ("An active participant in a drug transaction has the intent needed to aid and abet a § 924(c) violation when he knows that one of his confederates will carry a gun."). Martinez offers nothing more than general assertions that the evidence is insufficient based on his own construction of the case. But as the factfinder, "the jury was free to choose among the reasonable constructions of the evidence." *United States v. Loe*, 262 F.3d 427, 434 (5th Cir. 2001) (citation omitted).

\* \* \*

After viewing the evidence in the light most favorable to the prosecution, the Court finds that a reasonable jury could have found Martinez guilty beyond a reasonable doubt of Counts One and Two.

V.

For the reasons stated above, the Court hereby **DENIES** Martinez's motion to dismiss the indictment (Docket No. 44) and motion for acquittal (Docket No. 68).

So **ORDERED** and **SIGNED** this **14th** day of **April, 2025.**

_____
JEREMY D. KERNODLE
UNITED STATES DISTRICT JUDGE